ANDRÉ BIROTTE, JR.
United States Attorney

SANDRA R. BROWN
Assistant United States Attorney
Chief, Tax Division

GAVIN L. GREENE (SBN 230807)
Assistant United States Attorney
Federal Building, Room 7211
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-2729
Facsimile:  (213) 894-0115
Email: Gavin.Greene@usdoj.gov

BRIAN H. CORCORAN
Member, DC Bar, No. 456976
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 7238
Washington, D.C.  20044
Telephone: (202) 353-7421
Facsimile: (202) 514-6770
E-mail: brian.h.corcoran@usdoj.gov

Attorneys for Plaintiff, United States

IN THE UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civil No. CV 2:11-01175 PA (SSx) |
| DAVID CHAMPION, | **Declaration of Thomas Cheung** |
| Defendant. | |

I, Thomas Cheung, hereby declare as follows:

1. My name, as used and signed in the subject summons and this declaration, is an authorized, registered pseudonym under federal law and the regulations of the Internal Revenue Service.

2. I am employed as a revenue agent in the San Diego Territory, Group 1453, Area 7, Territory 1, Examination, Small Business/Self-Employed Division, of the Internal Revenue Service ("IRS"). I have been a revenue agent for 20 years.

3. As part of my duties as revenue agent, between 2005 and 2010, I was assigned to conduct examinations of various former customers of Defendant David Champion. I have also assisted other IRS Revenue Agents in their own examination of Champion's customers. The statements I make in this declaration are based upon my investigation, my review of tax returns and other materials relating to the examinations I conducted, and my experience as a revenue agent.

### *James and Leslie Iannitti*

4. Mr. Iannitti is a self-employed equipment financing consultant who previously operated his business under the name "Intermax Holding" in Valencia, California. Because Mr. and Mrs. Iannitti had not filed tax returns since 2004, they were audited in 2007 for the 2005 through 2007 tax years, and I was assigned to conduct the audit.

5. The Iannittis initially ignored our efforts to obtain materials relating to their income and related tax liabilities via an IRS summons, and also failed to respond to IRS inquiries as to why they felt they were not required to file. The IRS subsequently asked the Department of Justice to bring a summons enforcement proceeding against them. Before the matter was formally adjudicated, in 2009 Mr. Iannitti agreed to comply with the summons by stipulation.

6. In response to the enforcement proceeding, the Iannittis appeared in the IRS's offices in Los Angeles on May 4, 2009 and produced a large number of documents. During the meeting, Mr. Iannitti stated that he had known David Champion since 1990 and had corresponded with him over the years on a variety of topics, including federal income taxation. Mr. Iannitti also stated that Champion claimed to be an expert in tax law. In the course of our conversation, Mr. Iannitti also revealed to me that he had conversed at length with Champion about whether the tax law in fact applied to the Iannittis and ultimately decided to engage Champion to obtain his tax-related services. Mr. Iannitti provided copies of a number of invoices he received from Champion documenting the payments he made to Champion for Champion's services. (True copies of invoices from Champion to Mr. Iannitti are attached hereto as Exhibit 1).

7. As a result of my audit of the Iannittis, I learned that between 2005 and 2008, Champion provided a variety of services to the Iannittis dealing with tax issues, including creating a "pure trust" entity for Iannitti, and providing management and trustee services for that same trust. (A true copy of the Intermax indenture created for Mr. Iannitti by Champion is attached as Exhibit 2). Mr. Iannitti indicated that Champion had convinced he and his wife that a pure trust had no tax liability or income tax filing requirements, so that if it was used as the vessel for Ianitti's consulting business, the Ianittis could avoid the payment or filing of income tax relating to the business.

8. As the Intermax Indenture states, Mr. Iannitti as its settler(s) became the Managing Agent of the trust, with the authority to open bank accounts and be signers on its bank accounts, and to exercise "delegated authority" from the trustee in accordance with the Contract and Indenture. (*See* Intermax Indenture (Ex. 2)). Accordingly, this kind of trust was more akin to a grantor trust (in which the grantor

remains liable for the trust income) than a true irrevocable trust, and therefore the kind of trust that the IRS deems to lack economic substance.

9. I further discovered from the audit process that Champion had repeatedly drafted letters on the Ianittis' behalf, both to the IRS and third parties, to explain or justify the Ianittis' purported status as "nontaxpayers" who did not need to provide Employer Identification Numbers ("EIN") or Social Security Numbers ("SSN") on tax-related forms. (See, e.g., January 12, 2006 Letter from David Champion to Barbara Griffith, a true copy of which is attached as Exhibit 3; May 2, 2007 Letter from David Champion to Barbara Griffith, a true copy of which is attached as Exhibit 4).

10. In addition, I learned in the audit that Champion had advised Mr. Iannitti to establish a "warehouse" bank account (a bank account in which all of the customer's funds are commingled or pooled, so as to conceal the customer's ownership of the funds and thereby make it difficult for the IRS to make income tax determinations). Such illegal bank accounts prevent funds from flowing through to customers' personal bank accounts, thus reducing any potential attention by the IRS.

11. As a result of the audit, the Iannittis agreed to and had filed delinquent returns from 2005 through 2007, and were found to owe $15,621 in total tax liability (not including interest and penalties). The Intermax Holdings trust was also dissolved. The Iannittis have yet to satisfy completely their tax liability.

**Patrick and Christopher Linstruth**

12. Patrick Linstruth and his brother Christopher Linstruth owned a company named L2 Enterprises, a/k/a Quantum Network Solutions or "QNET." This company engaged in the business of web site design and provided other internet-related services. The Linstruths had not filed income tax returns since 1996, and I was accordingly assigned to oversee an audit for both of the Linstruths for the 2001 tax

year. The audits were later expanded to include years 2002 through 2006 as the examination progressed.

13. During the examination process, the IRS discovered that Christopher Linstruth (identified by his first name and last initial as "Chris L") had made certain claims on the testimonial page on Champion's web site, "nontaxpayer.org." (*See* testimonial page excerpt from "nontaxpayer.org" website, a true copy of which is attached as Exhibit 5 ("Champion has done an admirable job assisting us in restructuring our business so that what needed to be private, become private…")).

14. The IRS also discovered through records obtained from summoned third parties that Champion had created for the Linstruths a "pure trust" for L2 Enterprises, and had responded in writing on behalf of L2 Enterprises advocating the refusal to provide an EIN and or SSN when requested. (*See* August 18, 2006 Letter from David Champion to Superior Court of California, a true copy of which is attached as Exhibit 6).

15. At the outset of the audits, the Linstruths resisted the IRS's efforts by invoking a variety of standard tax-protester arguments. For example, Patrick Linstruth stated in writing that he had not filed income tax returns because he did not engage in any activity that would require application of U.S. tax. (*See* November 29, 2004 Letter from Patrick Linstruth to IRS, a true copy of which is attached as Exhibit 7). In supporting his theory for not filing, he referenced a number of frivolous arguments. (*See* January 13, 2005 Letter from Patrick Linstruth to IRS, a true copy of which is attached as Exhibit 8). He also attempted to defeat an IRS summons served on him by moving to quash it, arguing that he was a "nontaxpayer" outside the scope of the Internal Revenue Code. The court ruled against Mr. Patrick in his attempt to quash the IRS summons, however.

16. The Linstruths subsequently agreed to and have filed all their delinquent returns for years 2001 through 2006. Patrick owed a total tax liability of

approximately $305,000 and Christopher owed a total tax liability of approximately $223,069. Neither of the Linstruths have satisfied their tax indebtedness to date.

### *Gary & Connie Mach*

17.   Gary Mach owns a pool service company under the name Crystal Springs Pool Service (CSPS). Gary and Connie Mach have not filed tax returns since 1995. The Machs were notified of an IRS audit for years 2001 through 2007 in October 2006 but never responded to the IRS Request to produce documents.

18.   During the examination process, the IRS discovered that David Champion had helped the Machs set up a "pure trust organization" for CSPS and serves as the trustee for "CSPS trust."

19.   In the course of the examination of the Machs, the IRS served an administrative summons on the CSPS Trust's bank. In response, Champion sent a long protest letter to the bank designed to interfere with the enforcement of the summons. (*See* August 1, 2007 letter from David Champion to El Paso Bank, a true copy of which is attached as Exhibit 9). As no legal action was pursued after the letter was sent, however, the bank ultimately provided the summoned records to the IRS.

20.   As a result of the examination, the IRS determined that the Machs owed $215,690 in unpaid taxes for the audited years - an amount which remains unsatisfied to date.

### *Joseph Petreshek*

21.   Mr. Petreshek owns Voyager Industries, a consultant and mail order company that markets a glow-in-the-dark paint process through the internet, as well as information kits by which purchasers can develop their own businesses using the paint product and process.

22. In 2009, the IRS audited Petreshek in 2009 for the 2004 to 2009 tax years after it determined he had not filed income tax returns since 1993. In response, Petreshek wrote to the IRS on July 12, 2010 and indicated that he was "not within a class of person upon who Congress has imposed the income tax. As such I am not under any duty to file returns or pay any income tax. The facts and law to support my position are contained within the book that accompanies this letter. The information contained in Income Tax: Shattering the Myths is the facts and law that I relied upon in making my determination that I am not within a class of person upon who Congress has imposed the income tax". (*See* July 12, 2010 Letter from Joseph Petreshek to IRS, a true copy of which is attached as Exhibit 10). David Champion is the author of the book and sells it at his web site, www.taxrevolt.us. The IRS obtained a copy of the publication directly from Petreshek, who indicated to me his belief that the publication supported the legitimacy of his actions.

23. As a result of the examination, the IRS proposed (pursuant to Section 6020(b) of the Internal Revenue Code) a tax liability well over $800,000 for Petreshek for 2004 through 2009. (*See* Excerpts from Form 4549-A "Income Tax Discrepancy Adjustments" for Petreshek, dated September 26, 2011, true copies of which are attached as Exhibit 11).

**Richard Simkanin**

24. Richard Simkanin was a Champion customer in the late 1990s. He provided a testimonial on Champion's website in which he admits that he paid Champion to help him "educate" the employees of his company, Arrow Custom Plastic, about his decision to stop withholding payroll taxes from their compensation. (*See* Exhibit 5). "I felt that is was extremely important to have a person from outside the company to explain what the federal tax laws say and where to find these laws for themselves"). Simkanin also paid Champion to prepare and make a three-hour

presentation for his employees; that presentation is preserved on a video tape which the IRS obtained in the course of investigating Simkanin.

25. In 2004, Simkanin was convicted of criminal charges in federal court for failing to collect and pay over employment taxes of $175,032, presenting false claims, and failing to file income tax returns. *U.S. v. Simkanin*, No. 4:03-CR-00188-ALL (N.D. Tex. Jan. 7, 2004), *aff'd*, 420 F.3d 397 (5th Cir. 2005). Champion has acknowledged the prior assistance he provided to Simkanin on his "nontaxpayer.org" website. In reaction to Simkanin's conviction - the natural result of following Champion's "nontaxpayer" practices - Champion simply doubled down, urging readers not to reconsider the legality of their actions, but instead to do a better job of hiding their nontaxpayer "status" (*e.g.*, by dissolving their corporations or avoiding the public airing of their views). (*See* "Hard Lessons Learned," dated January 8, 2004, excerpted from "nontaxpayer.org," a true copy of which is attached hereto as Ex. 12).

### *Advice on Champion's Website*

26. As set forth on his website, Champion advises customers to cancel their existing Employer Identification Number (EIN) as a way of opting out of federal income payroll taxation obligations. (*See* Ex. 12 at p. 3). He also tells customers to dissolve existing corporations to ensure that the corporation has ceased to exist, rather than merely being suspended. And he instructs his customers never to file for refunds on taxes they have already paid because the Government will go after a refund-filing nontaxpayer "like a rabid dog." (*Id.*)

27. Champion also previously made available on his website www.nontaxpayer.org a document catalog listing documents available to his customers. The IRS obtained this catalog in the context of an administrative summons discussed below, although the catalog appears to have since been removed from the website). (*See* "Nontaxpayer.org" Document Catalog, a true copy of which is attached

as Exhibit 13). The documents listed in the catalog included banking documents, lender documents, real estate documents, withholding documents, TIN request responses, levy and garnishment documents, materials assisting customers in obtaining passports without disclosure of a Social Security number, and instructions on rebutting information returns.

### *Champion Summons and Materials Produced*

28. After the IRS became aware of Champion's role in the tax problems of his audited customers, in February of 2006 I served a summons upon Champion seeking disclosure of documents relating to the services he provides customers. Champion refused to produce any of the requested materials. Indeed - as reflected in an e-mail he provided to his customers that the IRS obtained through the administrative summons it served on James Iannitti, Champion even suggested that he had intentionally eliminated some of the files requested. (*See* April 16, 2008 e-mail, a true copy of which is attached as Exhibit 14).

29. In response, in 2008 at the IRS's request the Department of Justice filed a petition to enforce the summons against Champion. (*United States v. Champion*, Case No. 08-1629 PA (C.D. Cal.)). In that matter, I was required to give testimony explaining the basis and nature of the summons. The District Court ultimately ordered Champion to comply with the summons - but Champion still refused to cooperate, invoking the Fifth Amendment as his basis after he appeared at an interview I scheduled with him. In response, the Court found Champion in civil contempt on September 8, 2008, and briefly incarcerated him until he agreed to comply with the summons.

30. To purge the contempt, Champion produced a client list that he assembled from personal memory, as well as 15 Trust documents and 6 disclaimer notices. Because Champion testified that he had recently deleted documents from his

computer that were responsive to the IRS summons, he was ordered to turn over his computer to the IRS for imaging. The IRS was unable to extract copies of the files that Champion claimed to have deleted, however.

31. The 15 trust documents produced by Champion after the summons enforcement proceeding reference three types of trusts: "Sovereignty Pure" Trusts, "Original Intent Trust Services" Trusts, and "American Pure" Trusts. All three have the same settler, Brian Davis. I was unable to verify from IRS records whether any of the particular trusts in question have ever filed Form 1041 income tax returns.

32. The "pure trusts" I reviewed were much like the Intermax trust (not truly irrevocable, with the settler maintaining control over the business placed into the trust). Champion had also executed the trust documents for the "Original Intent Trust Services" trusts as creator and as trustee. Although these trusts purport to be "in the nature of an irrevocable trust," in fact the settler/grantor in each case had the ability to decree how the trust would terminate, as well as the power to terminate the trust after twenty years.

33. The American Pure Trusts disclosed by Champion similarly purport to be irrevocable trusts. The American Trust format as drafted by Champion seems to not give the Settler the explicit role/input over the trust that the Original Intent format did. However, the Board of Trustees in those trusts had the power to appoint officers such as a Managing Agent - likely the settler - who would possess the power to open trust bank accounts and exercise signatory authority over the same. Thus, these trusts also are not true irrevocable trusts.

**Harm to the Government**

34. Based upon the tax audits of the individuals or couples referenced in this declaration (Christopher and Patrick Linstruth; James and Leslie Iannitti; Gary and Connie Mach; Joseph Petreshek), plus three other Champion customers (Todd Blinn;

Leonard Simon; and Richard Simkanin), I calculate the total tax liability for these Champion customers alone, incurred by them as a result of reliance on Champion's advice, is approximately $2,097,939 - almost all of which remains unpaid to date. (*See* Calculation Spreadsheet summarizing tax liability for identified customers, a true copy of which is attached as Exhibit 15).

35. Champion also produced an incomplete customer list from personal memory after being compelled to do so by the summons enforcement proceeding. On it, he identified an additional 67 customers, none of whom included those audited and/or identified in this declaration. (*See* Client List, a true copy of which is attached as Exhibit 16). I accordingly expect that the actual unpaid taxes owed by such customers after following Champion's advice greatly exceeds the two million dollar figure I calculate for the eight instances mentioned above.

### *Champion's Individual Tax Liability*

36. Champion has not filed a Form 1040 federal income tax return since 1995. He was audited by the IRS in 1993 for the 1985 to 1990 tax years. For those years, as well as 1996 and 1997, he has an unpaid tax liability exceeding $800,000, exclusive of penalties and interest.

### *Champion's Website and Promotional Materials*

37. Champion owns and maintains two websites: www.orignalintent.org, which he started in approximately 2001 or 2002, and www.nontaxpayers.org, which he started about 2002 or 2003. He invites potential customers to contact him via the "nontaxpayers.org" site and meet with him at an initial rate of $300 per hour. In the course of my investigation, I reviewed materials maintained on Champion's website "nontaxpayer.org," and "www.originalintent.org." (True and correct copies of excerpts I obtained from the "nontaxyer.org" website are attached hereto as Exhibit

17; true and correct copies of excerpts I obtained from the "originalintent.org" website are attached hereto as Exhibit 18).

38. As a result of the administrative summons I served on Champion, I obtained from him some disclaimers signed by his customers affirming that they were "nontaxpayers." (See, e.g., September 5, 2003 disclaimer signed by Joseph Zulewski, a true copy of which is attached as Exhibit 19).

39. My investigation revealed that Champion has in the past broadcast his views through his own independent radio program (http://www.americanradioshow.us/) entitled "The Dave Champion Show" that has been aired through webcast and satellite.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 9, 2011

Thomas Cheung